UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER SOTO,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>    Defendant. | No. 2:23-cv-02148-DJC-JDP<br><br><u>ORDER DENYING MOTION TO DISMISS AND GRANTING TRANSFER MOTION</u> |

    Plaintiff Roger Soto brings this case against Defendant United Airlines, Inc. for assault and wrongful termination based on Plaintiff's refusal to receive a COVID-19 vaccine because of his sincerely held religious beliefs. Defendant has filed a motion asking that the Court dismiss the case for failure to state a claim or for improper venue, and, in the alternative, asking for the case to be transferred to Chicago in the Northern District of Illinois, where Defendant is headquartered. For the reasons set forth below, the Court grants in part and denies in part Defendant's Motion to Dismiss or in the Alternative to Transfer Venue (ECF No. 9). Specifically, the Court finds that the Court has personal jurisdiction over Defendant and will grant the motion to transfer venue and order that the case be transferred to the Northern District of California, where the alleged wrongful termination occurred. As a result, the Court

declines to reach the merits of the Rule 12(b)(6) motion to dismiss and instructs the parties to contact the assigned chambers in the transferee or receiving court for further direction regarding resolution of the motion.

## BACKGROUND

### I. Factual Background

Defendant "is a large, major American airline headquartered at Willis Tower in Chicago, Illinois." (Compl. (ECF No. 1) ¶ 7.) Plaintiff is a flight attendant for Defendant who has worked in this position for 25 years. (*See id.* ¶¶ 6, 27.) Plaintiff lives in Calaveras County, California and is a devout traditional Roman Catholic. (*See id.* ¶¶ 6, 28.) As part of his faith, he believes that the sanctity of life is one of the most cherished commandments of his faith. (*Id.* ¶ 28.)

As alleged, this case revolves around Defendant's decision on August 6, 2021 to become "the first airline carrier and one of the first large corporations to mandate a vaccine for COVID-19 as a condition of employment for its workforce." (Compl. ¶ 13.) Plaintiff claims that Defendant "decided it would be first in the aviation industry to mandate the COVID-19 vaccine" and, as a result, "conducted a significant encroachment into the lives and health of every United employee by coercing employees to undertake an experimental medical procedure that affects their lives outside the workplace." (*Id.* ¶ 15.) Defendant ultimately established September 27, 2021 as the deadline for employees to become fully vaccinated for COVID-19 by showing proof that he or she received two doses of the Pfizer or Moderna vaccine or one dose of the Johnson & Johnson vaccine. (*See id.* ¶¶ 16–17.) Employees who remained unvaccinated by that deadline would be terminated. (*Id.* ¶ 17.)

To effectuate this COVID-19 vaccine mandate, Defendant "implemented an accommodation request system in which Plaintiff was given the option to request accommodations based on religious beliefs or medical reasons via United's Reasonable Accommodation Process." (Compl. ¶ 18.) "Employees were not allowed

to seek both religious and medical accommodations . . . ." (*Id.*) Employees had until August 31, 2021 to submit an accommodation request. (*See id.* ¶ 19.)

Plaintiff submitted his accommodation request but complains that Defendant made no accommodation. Instead, Plaintiff alleges that he was wrongfully discharged because "those employees who sought [accommodations] would be placed on indefinite, unpaid leave starting October 2, 2021, with no benefits." (Compl. ¶ 20.) According to Plaintiff, Defendant "never provided any 'accommodated' employee or Plaintiff with a date by which they could return to work; and stated this period of unpaid leave might last up to 72 months." (*Id.* ¶ 21.) Moreover, "any employee whose accommodation request was denied [was required to] receive the vaccine by September 27, 2021, or be terminated." (*Id.* ¶ 22.)

Plaintiff complains that his placement on unpaid leave amounted to wrongful termination because he refused to receive the vaccination based on his position that "[t]aking an injection of a vaccine that uses aborted fetal tissue in its use and/or development violates his strongly held religious beliefs, honoring the Fifth Commandment of 'Thou Shalt Not Kill.'" (Compl. ¶ 29.) Plaintiff notes that, despite submitting his accommodation request and including a letter from his priest explaining his conflict of conscience with the COVID-19 vaccines, Defendant required additional support. (*See id.* ¶ 30.) This led to several emails and phone calls between Plaintiff and Defendant regarding Plaintiff's beliefs and his support for those beliefs. (*See id.* ¶¶ 31–34.) Ultimately, Plaintiff was granted a religious exemption, but he was "placed [ ] on an unpaid, unprotected, and unelected leave of absence." (*Id.* ¶ 35.)

As a result, Plaintiff alleges that he and his wife suffered harm because he lost his health insurance just after his wife "recently withstood a heart attack . . . ." (Compl. ¶ 38.) Plaintiff also alleges that "Defendant's COVID-19 vaccine mandate caused Plaintiff to reasonably belief that Defendant was about to carry out the threat of harmful and offensive contact upon him, by way of forcing Plaintiff to inject an untested and potentially unsafe substance into his body." (*Id.* ¶ 56.) Allegedly, the

3

vaccine requirement "was an unwelcome invasion of Plaintiff's privacy and bodily integrity." (*Id.* ¶ 57.)

## II. Procedural Background

Plaintiff filed the Complaint in federal court on September 27, 2023. (*See* ECF No. 1.) Defendant filed the instant Motion to Dismiss on January 9, 2024. (*See* ECF No. 9; *also* Def.'s Mem. of P. and A. in Supp. of Mot. to Dismiss or in the Alternative to Transfer Venue (ECF No. 9-1) ("Motion" or "MTD").) Plaintiff eventually filed his Opposition after the Court issued an Order to Show Cause. (*See* Pl.'s Mem. of Law in Opp'n to Def.'s MTD (ECF No. 16) ("Opposition" or "Opp'n"); *also* ECF Nos. 12, 17.) After several extensions, Defendant finally filed its Reply on May 3, 2024. (*See* Def.'s Reply in Supp. of MTD (ECF No. 25) ("Reply").) The matter was submitted without oral argument and is now fully briefed.

**DISCUSSION**

## III. This Court Has Personal Jurisdiction Over Defendant

### A. Legal Standard Under Federal Rule of Civil Procedure 12(b)(2)

Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Where parties rely solely on affidavits, a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). In such cases, "[courts] only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Schwarzenegger*, 374 F.3d at 800. Although the plaintiff cannot "simply rest on the bare allegations of its complaint," uncontroverted allegations in the complaint must be taken as true. *Id*. Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id*.

4

**B. Analysis**

In exercising personal jurisdiction, a federal district court is constrained by the Fourteenth Amendment's Due Process Clause and the long-arm statute of the state in which it sits. *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023). Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analysis under state law and federal due process are the same. *Schwarzenegger*, 374 F.3d at 800–01.

For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)) (internal quotation marks and citation omitted in *Schwarzenegger*). Given this focus on the forum state contacts, jurisdiction comes in two forms: general jurisdiction and specific jurisdiction. *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1161 (9th Cir. 2023) (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)), *cert. denied*, 144 S. Ct. 826 (2024). As explained below, while the Court agrees with Defendant that it does not have general jurisdiction over it (*see* MTD at 11–12; Reply at 2), the Court concludes that it does have specific jurisdiction over Defendant because of its extensive contacts in California, including hubs located at Los Angeles International Airport and San Francisco International Airport. (*See* Decl. of Kirk Limacher in Supp. of Def.'s MTD (ECF No. 9-2) ¶ 12 ("Limacher Decl.").)

**1. The Court Lacks General Jurisdiction Over Defendant**

General jurisdiction – or "all-purpose" jurisdiction – comes into play when a defendant is "essentially at home" in the forum state. *Davis*, 71 F.4th at 1161 (quoting *Ford Motor Co.*, 592 U.S. at 358). For corporations, this type of extensive contact generally means the company's place of incorporation and its principal place of

business. *Id.* Such jurisdiction extends over "any and all claims" against the defendant concerning "events and conduct anywhere in the world." *Id.*

Plaintiff alleges that Defendant is "headquartered at Willis Tower in Chicago, Illinois." (Compl. ¶ 7; *see also* Limacher Decl. ¶ 3 (same).) Defendant also submitted the Declaration of Kirk Limacher, the Vice President of Flight Operations Planning and Development in Chicago, Illinois, who stated that Defendant is incorporated in Delaware. (*See* Limacher Decl. ¶ 3.) Thus, Plaintiff is domiciled or "at home" in Illinois and Delaware but not in California. Therefore, the Court may only exercise specific jurisdiction over Defendant. *See Impossible Foods Inc.*, 80 F.4th at 1086.

### 2. The Court Has Specific Jurisdiction Over Defendant

Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Impossible Foods Inc.*, 80 F.4th at 1086 (quoting *Ford Motor Co.*, 592 U.S. at 359). "Distilling Supreme Court precedent, [the Ninth Circuit has] articulated three requirements for establishing specific jurisdiction over a non-resident defendant:"

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.* (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)). The plaintiff bears the burden on the first two steps. *See id.* If the first two steps are satisfied, then the defendant "must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021).

#### i. The Two Hubs Establish Specific Jurisdiction

Under the first step of the three-part analysis, "to be subject to specific jurisdiction the defendant must purposefully direct its activities toward the forum state, purposefully avail itself of the privileges of conducting activities there, or

engage in 'some combination thereof.'" *Impossible Foods Inc.*, 80 F.4th at 1088 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (*en banc*) (*per curiam*)). Courts analyze a defendant's contacts under the purposeful direction test or the purposeful availment test depending on the nature of the underlying claims. *See id.* (quoting *Ayla*, 11 F.4th at 979). "When a defendant's conduct primarily occurs outside the forum state, [courts] generally apply the purposeful direction test and look to whether the defendant expressly aimed acts at the forum state knowing that they would harm the plaintiff there." *Id.* (citing *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 603–04 (9th Cir. 2018)). Purposeful availment, meanwhile, is satisfied when "the defendant has taken deliberate action within the forum state or . . . has created continuing obligations to forum residents." *Id.* (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)). Thus, "[p]urposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort." *Id.* (quoting *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020)). Courts determine which test to apply claim-by-claim. *See, e.g.*, *Grootonk v. Labrie Env'tl Grp., LLC*, No. 8:22-cv-01868-FWS-ADS, 2023 WL 5440299, at *6 (C.D. Cal. July 20, 2023). *See also San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1035 n.13 (9th Cir. 2023) ("Where – as here, "a plaintiff relies on specific jurisdiction, he must establish that jurisdiction is proper for 'each claim asserted against a defendant.'"), *cert denied*, 144 S. Ct. 190 (2023).

Here, neither party addresses which test to apply, and "[a]lthough the distinction between purposeful availment and direction is often a useful and appropriate doctrinal table-setting device, 'there's no need to adhere to [this] iron-clad doctrinal dichotomy' in every case." *Impossible Foods Inc.*, 80 F.4th at 1089 (quoting *Davis*, 71 F.4th at 1162) (first alteration added). "At the end of the day, the purposeful direction and availment tests simply frame our inquiry into the defendant's

7

'purposefulness' vis-à-vis the forum state, ensuring that defendants are not 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'" *Id.* (quoting *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma*, 972 F.3d 1101, 1107 (9th Cir. 2020)). "And by that general metric," the Court "easily conclude[s] . . . that [Defendant] directed its activities toward California and/or purposefully availed itself of the benefits and privileges of California's laws." *Id.*

Under a purposeful direction analysis, courts apply the *Calder* "effects" test which imposes three requirements, "the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1206 (quoting *Schwarzenegger*, 374 F.3d at 803). Here, Defendant intentionally managed two "hubs" in California where Defendant intentionally employed people and where Defendant intentionally enforced its vaccine mandate. *Compare with Schwarzenegger*, 374 F.3d at 806 (determining that the intentional act was placing the advertisement in a local newspaper); *Calder v. Jones*, 465 U.S. 783, 789 (1984) (finding that the researching, writing, editing, and publishing of the allegedly libelous tabloid news article were the intentional acts). These intentional acts were "expressly aimed" at California because managing hubs in California, employing individuals in California, and enforcing the vaccine mandate in California were "'event[s] within a sequence of activities designed to use California markets for the defendant's benefit." *Schwarzenegger*, 374 F.3d at 807 (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1197 (9th Cir. 1988)). Finally, based on the two "hubs" in California, more than any other state, there are more than sufficient instances of Defendant enforcing the vaccine mandate on California employees for that state to bear a jurisdictionally sufficient amount of harm. *See Yahoo! Inc.*, 433 F.3d at 1207.

Application of the purposeful availment test reaches the same result even more straightforwardly. Under the purposeful availment test, the defendant "must have 'performed some type of affirmative conduct which allows or promotes the transaction

of business within the forum state.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (quoting *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)). A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there. *Schwarzenegger*, 374 F.3d at 802. Here, Defendant should not be surprised to be haled into a California court based on the two "hubs" it maintains in Los Angeles and San Francisco. *See Impossible Foods Inc.*, 80 F.4th at 1089 (quoting *Global Commodities*, 972 F.3d at 1107). Indeed, a Texas district court has found that it had specific jurisdiction over a similar case against Defendant regarding its COVID-19 vaccine mandate, and Texas only has *one* hub. *See Sambrano v. United Airlines, Inc.*, No. 4:21-cv-1074-P, 2021 WL 5178829, at *5 (N.D. Tex. Nov. 8, 2021). At bottom, given Defendant's commercial activity here, "it should have reasonably anticipated being brought into court in California." *Sinatra*, 854 F.2d at 1197 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

### ii. The Case Relates to Plaintiff's Employment

Under the second step, the plaintiff must still show that the claims or causes of action "arise out of or relate to the defendant's contacts" with the state. *See Impossible Foods Inc.*, 80 F.4th at 1091 (quoting *Ford Motor Co.*, 592 U.S. at 359). In conducting this second step of the inquiry, courts "'consider the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts.'" *Id.* (quoting *Yahoo! Inc.*, 433 F.3d at 1210).

Here, Defendant argues that "[w]hile Defendant offers flight services in California, the employment decisions and policies Plaintiff is challenging were adopted and implemented by Defendant at its corporate headquarters in Chicago, Illinois." (MTD at 13 (citing Limacher Decl. ¶ 5).) But Plaintiff's claims are no different than the plaintiffs complaining about the harm that arises from a known channel of distribution, like the website accessible to users in the forum state, the defamatory

9

newspaper distributed in New Hampshire, the libelous articles distributed in California, and the videos of sexual abuse published online that targeted a U.S. audience. *See Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 457–58 (9th Cir. 2024) (collecting cases). Crucially, the Ninth Circuit has repeatedly held that "personal jurisdiction over a defendant may be proper where the defendant has committed an act which has effects in a state, because the defendant 'purposefully directed' its economic activity towards that state." *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 505 (9th Cir. 2000). Such is the case here when Defendant enforced its vaccine mandate at the two hubs in California that target California's businesses, employees, and markets. *See Franey v. Am. Battery Sols. Inc.*, No. 22-CV-03457-LB, 2022 WL 4280638, at *10 (N.D. Cal. Sept. 15, 2022) (finding there was personal jurisdiction over defendants where the defendants' "contacts with California resulted from the employment relationship, and the plaintiff's claims arise out of the relationship.").

As a result, the Court concludes that Plaintiff's claims arise out of or relate to Defendant's enforcement actions in California, specifically at the hub in San Francisco.

### iii. Exercising Personal Jurisdiction Over Defendant Would Not Be Unreasonable

"In evaluating the reasonableness of an exercise of personal jurisdiction, [courts] 'use a seven-factor balancing test that weighs':"

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Doe*, 93 F.4th at 457–58 (quoting *Freestream Aircraft*, 905 F.3d at 607). If the plaintiff establishes the first two steps, "the burden then shifts to the defendant to 'present a

10

compelling case' that the exercise of jurisdiction would not be reasonable.'" *Axiom Foods*, 874 F.3d at 1068–69 (quoting *Schwarzenegger*, 374 F.3d at 802).

Defendant made no argument regarding the unreasonableness of the exercise of personal jurisdiction at step three in its initial Motion. (*See* MTD at 12–14.) Instead, Defendant argued that there were insufficient contacts and that those contacts did not relate to California. As a result, because the Court found that Plaintiff met his burden under the first two steps, Defendant has the burden to establish the unreasonableness of the exercise of personal jurisdiction, but Defendant failed to make any argument and has waived any argument. *See Axiom Foods*, 874 F.3d at 1068–69 (quoting *Schwarzenegger*, 374 F.3d at 802); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *Mitchell v. United States*, 971 F.3d 1081, 1084 n.4 (9th Cir. 2020). Accordingly, the Court concludes that the exercise of jurisdiction would not be unreasonable.

Thus, the Court DENIES Defendant's Motion to Dismiss under Rule 12(b)(2).

## IV. The Case Should Not be Dismissed Even Though Venue Is Wrong

### A. Legal Standard Under Federal Rule of Civil Procedure 12(b)(3)

Rule 12(b)(3) states that a party may move to dismiss a case for "improper venue." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013) ("*Atlantic Marine*"). Title 28, section 1406(a) of the United States Code states that the "[d]istrict court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." These provisions therefore authorize dismissal only when venue is "wrong" or "improper" in the forum in which it was brought. *Atlantic Marine*, 571 U.S. at 55.

This question – whether venue is "wrong" or "improper" – is generally governed by 28 U.S.C. § 1391 unless a more specific venue statute applies. *See Atlantic Marine*, 571 U.S. at 55 and n.2. Section 1391 identifies three forums where venue may lie: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a

11

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. *See* 28 U.S.C. § 1391(b). When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). *Atlantic Marine*, 571 U.S. at 56. If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a). *Id.*

A motion under Rule 12(b)(3) for improper venue functions much like other motions under Rule 12(b) in that the facts in the complaint are assumed true. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (collecting cases). When there are disputed facts, those facts are construed in favor of the plaintiff, and all reasonable inferences must be construed in their favor. *See id.* at 1138.

**B.     Analysis**

**1.     Venue Does Not Lie in the Eastern District of California**

Defendant argues that venue does not lie in the Eastern District of California because Defendant does not reside here and the relevant acts took place in Chicago, Illinois, located in the Northern District of Illinois, and in San Francisco International Airport, located in the Northern District of California. (*See* MTD at 14–15.) The Court agrees because the Eastern District is not a judicial district where (1) Defendant is domiciled or (2) where a substantial part of the events or omissions occurred. *See* 28 U.S.C. § 1391(b)(1)–(2).[1]

---

[1] Defendant also argues that the more specific venue provisions under California's Fair Employment and Housing Act ("FEHA"), codified at California Government Code section 12965, apply regardless of how the cause of action is construed. (*See* MTD at 15–16 (citing *Brown v. Superior Ct.*, 37 Cal. 3d 477, 487 (1984)).) However, venue under the federal statutes is a federal question that depends on federal law. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 183 n.15 (1979) (citing Wright and Miller, *Federal Practice and Procedure Jurisdiction* § 3803; *see also* 17 Moore's Federal Practice – Civil § 110.01. Regardless, whether under FEHA's venue provisions or under the federal civil rights venue provisions, venue would lie not in the Eastern District of California, but in San Francisco in the Northern

Accordingly, venue does not properly lie in the Eastern District of California.

### 2. Transfer to the Northern District of California is Appropriate

Because the Court has determined that venue is not proper in the Eastern District of California, the case must be dismissed or transferred under 28 U.S.C. § 1406(a) if the Court determines that it is in the interest of justice to transfer the case to any district in which it could have been brought. *See Atlantic Marine*, 571 U.S. at 56. The Ninth Circuit has taken "a broad view of when transfer is appropriate, recognizing that '[n]ormally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" *Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc.*, 793 F.3d 991, 996 (9th Cir. 2015) (quoting *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990)). Courts "will 'ordinarily find transfer to be in the interest of justice where . . . the plaintiffs appear to have been "unaware of or confused about the proper forum in which to file [their] action."'" *Id.* (quoting *Munns v. Kerry*, 782 F.3d 402, 415 (9th Cir. 2015)) (alteration added in *Munns*). Or "when the time period has elapsed to file in the appropriate court." *Id.* (citing *Kennecott Corp. v. U.S. Dist. Ct. for S. Dist. of California*, 873 F.2d 1292, 1293 (9th Cir. 1989)). "More often, however [courts] have simply found that absent contravening considerations, another court's exclusive jurisdiction makes transfer appropriate." *Id.* (collecting cases).

But transfer would not be in the interest of justice where the party "'was aware of the proper procedure for review' but filed with a different court for a bad-faith purpose, such as to circumvent an earlier order of dismissal." *Amity Rubberized Pen Co.*, 793 F.3d at 996 (citing *Puri v. Gonzales*, 464 F.3d 1038, 1043 (9th Cir. 2006)). That is, "transfer will generally be in the interest of justice, unless it is apparent that the matter to be transferred is frivolous or was filed in bad faith." *Id.* This is a low bar and, as prior cases illustrate, it will usually involve a very limited inquiry by the transferring

---

District of California, where Defendant discharged Plaintiff, or in Chicago in the Northern District of Illinois, where Defendant is headquartered. *See* Cal. Gov't Code § 12965(a)(4).

13

court. *Id.* But this narrow scope is by design, as the interest of justice will rarely be served by one court engaging in a lengthy pre-transfer analysis, only ultimately to send the case to a new court that must start afresh. *Id.*

The Court concludes that the interests of justice would be better served by transferring the case to the Northern District of California because Defendant's policies "had effects in the state, and because California ha[s] an interest in providing a forum for the protection of its residents." *Passantino*, 212 F.3d at 505 (citing *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1399 (9th Cir. 1986)). *See also id.* (rejecting a rule "that would allow venue only where the decision to commit the unlawful employment practice is made."). Even though Plaintiff filed in the wrong forum, it does not appear that he did so in bad faith, but, rather, because "Plaintiff lives within the Eastern District of California." (Opp'n at 10.)

As a result, the Court DENIES Defendant's Motion to Dismiss under Rule 12(b)(3) and 28 U.S.C. § 1406(a) but GRANTS Defendant's Motion to Transfer.

**V.    The Court Declines to Reach the Motion to Dismiss**

Because this Court has concluded that venue does not properly lie in the Eastern District of California and that the interests of justice would be served by transferring the matter to the Northern District of California, the Court declines to reach the merits of Defendant's Motion to Dismiss under Rule 12(b)(6), as courts routinely defer decision on the matter to the assigned judge upon transfer. *See, e.g.*, *Chaker v. Becerra*, No. 2:20-cv-1248-TLN-KJN-PS, 2021 WL 826167, at *4 (E.D. Cal. Mar. 4, 2021) (citing *Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 588 (N.D. Cal. 2020)). Once the case has been transferred, the parties should contact the assigned chambers for further direction regarding resolution of the pending motion to dismiss. *See id.*

////

////

////

**CONCLUSION**

For the reasons set forth above, the Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss or in the Alternative to Transfer Venue (ECF No. 9). The Court GRANTS Defendant's Motion to Transfer Venue, transferring the matter to the Northern District of California. As a result, the Court declines to reach the merits of Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) after denying the motions to dismiss under Rules 12(b)(2) for lack of personal jurisdiction and 12(b)(3) for improper venue. Following transfer, the parties should contact the assigned chambers of the transferee or receiving court for further direction regarding resolution of the Rule 12(b)(6) motion to dismiss.

It is further ordered that all dates and deadlines set before the undersigned are hereby vacated. The Clerk of Court is directed to transfer documents to the Northern District of California and to close this case.

Dated: May 17, 2024

THE HONORABLE DANIEL J. CALABRETTA
UNITED STATES DISTRICT JUDGE

DJC3 – Soto.23cv2148.Transfer.Mot.and.MTD